IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Mark R. Newman, M.D., | : | Case No. 1:04-cv-186 |
| | : | |
| Plaintiff, | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | |
| Tessa Complete Health Care, Inc., | : | ORDER DENYING MOTION FOR |
| | : | DEFAULT JUDGMENT AND |
| Defendant. | : | ORDERING PLAINTIFF TO SHOW |
| | : | CAUSE |

This matter comes before the Court on Plaintiff Mark R. Newman's Motion for Default

Judgment (doc. #27).  For the reasons below, Plaintiff's Motion (doc. #27) is **DENIED**

**WITHOUT PREJUDICE** and Plaintiff is **ORDERED** to **SHOW CAUSE**, within **30 days** of

this Order, why this case should not be dismissed for lack of jurisdiction over Defendant Tessa

Complete Health Care, Inc.

I.      **BACKGROUND**

Plaintiff Mark R. Newman, M.D. ("Newman") filed this suit against Defendant Tessa

Complete Health Care, Inc. ("Tessa") in March 2004, seeking damages for Tessa's alleged

breach of an employment agreement with Newman.  (Doc. #1.)  At the time of his initial federal

filing, Newman was engaged in independent arbitration proceedings over the same agreement.

In June 2004, an arbitrator issued a decision requiring Tessa to pay Newman $16,000 in unpaid

salary and liquidated damages, $4,300,000 for an unpaid signing bonus, $22,227 in attorney's

fees, and $863,150 in prejudgment interest.  (Doc. #16 at 2; doc. #26 Ex. B at 5.)  The arbitrator

also required Tessa to reimburse Newman for certain expenses advanced to the arbitration

association and made the parties jointly and severally liable for costs.  (Doc. #16 at 2; doc. #26

1

Ex. B at 5.)  Newman now seeks a civil judgment enforcing or "confirming" an award against

Tessa in the amount of $5,223,704.00, pursuant to the substantive authority of the Federal

Arbitration Act ("FAA"), 9 U.S.C. § 9, and Ohio Revised Code ("O.R.C.") Section 2711.09 and

the procedural authority of Federal Rule of Civil Procedure 55.  (See docs. ##s 26, 27.)

In July 2005,[1] the Court held a conference at which it raised concerns as to whether

Newman had perfected service on Tessa and whether the Court had subject matter jurisdiction to

enforce Newman's arbitration award against Tessa.  (See, e.g., doc. #19 at 2.)  Newman agreed

to resolve and address those issues in a second amended complaint.  (Id.)  In April 2006, two

months after filing his second amended complaint, Newman moved for both an entry of default

and default judgment against Tessa.  (See docs. ##s 26, 27, 28.)  The Clerk of Court has now

entered a default against Tessa, leaving Newman's Motion for Default Judgment (doc. #27) as

the only pending motion in this case.[2]  (See doc. #29.)

## II.    ANALYSIS

Newman moves for default judgment under Rule 55(b)(1), which provides:

> When the plaintiff's claim against a defendant is for a sum certain or for a sum
> which can by computation be made certain, the clerk upon request of the plaintiff
> and upon affidavit of the amount due shall enter judgment for the amount and
> costs against that defendant, if the defendant has been defaulted for failure to
> appear . . .

---

[1] The Court's only prior Order in this case (doc. #16) outlines its procedural history
through June 2005.

[2] Newman filed his pending Motion for Default Judgment (doc. #27) before his Motion
for Entry of Default (doc. #28).  As the Clerk recognized in addressing the latter motion first, the
Court may not entertain a motion for default judgment under Federal Rule 55(b) until a party has
obtained an entry of default under Federal Rule 55(a).  See Fed. R. Civ. P. 55(a), (b) and 10A
Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2682 (3d. ed. 1998.)

Fed. R. Civ. P. 55(b)(1); see also doc. #27 at 4.

In light of the general presumption that legal disputes are best resolved on their merits, default judgment is a "drastic step" that should be reserved for relatively "extreme cases." United Coin Meter Co. v. Seaboard Coastline R.R., 705 F.2d 839, 845-46 (6th Cir. 1983). While the decision to issue a default judgment is generally committed to the trial court's discretion, that discretion is not "unfettered." Shephard Claims Serv., Inc., v. William Darrah & Assoc., 796 F.2d 190, 193 (6th Cir. 1986). Default judgments are typically less appropriate where it appears that an alleged default may stem from some "honest mistake," and not "willful misconduct, carelessness, or negligence." See, e.g., id. Such judgments are also presumptively void wherever the issuing court lacks jurisdiction over the parties or subject matter or default would raise other due process concerns. See, e.g., Antoine v. Atlas Turner, 66 F.3d 105, 110 (6th Cir. 1995).

For the reasons below, the Court finds that issuing a default judgment against Tessa on the current record would raise both jurisdictional and equitable concerns. The Court accordingly **DENIES** Newman's Motion for Default Judgment (doc. #27) **WITHOUT PREJUDICE** and instead orders Newman to **SHOW CAUSE** why his claims against Tessa should not be dismissed for lack of personal jurisdiction.

A.      **Jurisdiction (Service of Process)**

The Court cannot issue any valid judgment, including a default, against a party who has not been properly served with process and made subject to the court's jurisdiction.[3]  See LSJ

_____

[3] To bind Tessa, the Court must also find that 1) Tessa is amenable to service of process under Ohio's long-arm statute and that 2) the exercise of personal jurisdiction would not deny Tessa due process. See Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002) (federal question); Theunissen v. Matthews, 935 F.2d 1454, 1459 (6th Cir. 1991) (diversity). Ohio's long-arm

Inv. Co. v. O.L.D., Inc., 167 F.3d 320, 322-24 (6th Cir. 1999); Antoine, 66 F.3d at 110.  Service

is proper only where it complies with the formal requirements of Federal Civil Rule 4 and

provides "notice reasonably calculated, under all the circumstances, to apprise interested parties

of the pendency of [an] action and afford them an opportunity to present their objections."  LSJ,

167 F.3d at 323 (citing in part Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314

(1950)).

      Newman served his original and first amended complaint on an entity, CT Corporation of

Atlanta, Georgia, that apparently he understood to be Tessa's registered agent.  (Doc. #16 at 2;

doc. #27 at 3.)  Shortly after Newman filed his first amended complaint, the Clerk of Court

received an unexecuted waiver of service and letter from CT Corporation indicating that it was

no longer providing statutory representation services to Tessa in Georgia, that its attempted

---

statute allows the court to "exercise personal jurisdiction over a person who acts directly or by
an agent, as to a cause of action arising from the person's" "[t]ransacting any business" or
"[c]ontracting to supply services" in Ohio.  O.R.C. § 2307.382(A)(1), (2).  Under the federal
constitution, in a "suit arising out of or related to [a] defendant's contacts" with a forum state,
the court may exercise personal jurisdiction over a defendant if 1) the defendant "purposefully
avail[s] himself of the privilege of acting in the forum state or causing a consequence" in the
state; 2) the cause of action "arises from the defendant's activities there"; and 3) "the acts of the
defendant or consequences caused by the defendant have a substantial enough connection with
the forum state to make the exercise of jurisdiction over the defendant reasonable."  Third Nat'l
Bank in Nashville v. WEDGE Group Inc., 882 F.2d 1087, 1089-90 (6th Cir. 1989) (citing in part
International Shoe v. Washington, 326 U.S. 310 (1945).).  Newman's second amended complaint
avers that Tessa is a "Georgia corporation currently operating in Tigard, Oregon."  (Doc. #26 at
1.)  The employment agreement attached to the complaint indicates, however, that Newman was
to "perform his job at Cincinnati, Ohio . . . except for reasonable travel . . ."  (Doc. #26, Ex. A at
1-2 ¶ 1.1(e).)  It further provides that Ohio law will govern contract interpretation.  (Id. at 6.)
Finally, while the complaint does not indicate where the agreement was negotiated or where the
specific interactions it describes between Newman and other Tessa employees took place, it
avers that "Newman performed his duties and responsibilities" under the agreement at all
relevant times.  (Doc. #26 at 2 ¶ 12.)  The most natural reading of this language is that Newman
worked for Tessa, in Cincinnati, for some period of time.  These facts and allegations satisfy
Newman's *prima facie* burden of showing that – but for the apparent flaws in service – this
Court would have personal jurisdiction over Tessa.  See, e.g., Theunissen, 935 F.2d at 1458.

service to Tessa by mail had been returned undeliverable, and that it was not aware of another address for Tessa.  (Doc. #9 Ex. 1; doc. #16 at 2-3; doc. #27 at 3.)  The letter did not indicate when CT had ceased representing Tessa.  (Doc. #9 Ex. 1; doc. #16 at 3.)

Before filing his second amended complaint with the Court, Newman sought and obtained leave to have the United States Marshall attempt to serve Tessa by delivering the complaint and summons to the Ohio Secretary of State and a different corporate entity, National Registered Agents of Duluth, Georgia, that Newman submitted was then acting as Tessa's registered agent.  (Docs ##s 20, 22.)  Copies of the summons and complaint were sent by certified mail to each address, and the summons were returned executed in fall 2005.  (See docs. ##s 24, 25).  As of this Order, however, Tessa has yet to answer Newman's second amended complaint or otherwise appear in this action.

## 1.    Compliance with Federal Rule 4

To satisfy Federal Rule 4, Newman must serve Tessa by one of the procedures enumerated in the Rule, in Ohio state law, or in the law of the state in which he attempts service (if not Ohio).  LSJ, 167 F.3d at 322-24; see also Fed. R. Civ. P. § 4(h)(1) (referencing § 4(e)(1).)  Under both the Federal and Ohio civil rules, a domestic corporation may be served by delivering a copy of the summons and complaint to the corporation's officer, manager, general agent, or any "agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(h)(1); Ohio Civ. R. 4.2(F).  The Ohio rules further provide for service "by certified or express mail at any of [the corporation's] usual places of business."  Ohio Civ. R. 4.2(F).  Defendant corporations that do not currently reside in Ohio or are otherwise absent from the state may be served out of state by certified or express mail.  Ohio Civ. R. §§ 4.3(A), (B)(1).  If a complaint

5

and summons mailed out of state are "returned with an endorsement showing failure of delivery," the serving party or attorney may nonetheless complete service by filing an "affidavit setting forth facts indicating the reasonable diligence utilized to ascertain the whereabouts of the party to be served."  Ohio Civ. R. 4.3(B)(1).

It does not appear, from the current record, that Newman has perfected service by any of the methods described above.  It does not appear that Newman has ever attempted to serve Tessa either by physically delivering a copy of his second amended complaint and summons to any of its officers, managers, or general agents, or by mailing those documents to any of Tessa's "usual places of business."  Newman's summons and complaint have been served on an entity – National Registered Agents – that Newman asserts is Tessa's registered agent.  However, he has not actually explained – let alone set forth any evidence indicating – why he believes National Registered *is* in fact "authorized by appointment or law" to accept service on Tessa's behalf. Given the past confusion over CT Corporation's status as a registered agent for Tessa, and the lack of any response from Tessa since Newman's second amended complaint was mailed to National Registered this fall, the Court cannot rest on Newman's assurances as to the relationship (if any) between National Registered and Tessa.  Nor has Newman satisfied the Ohio provision for perfecting service with an affidavit indicating that after CT Corporation returned Newman's first amended complaint and waiver of service unexecuted, his counsel used "reasonable diligence" to attempt to serve Tessa with Newman's second amended complaint. While it could be that Newman's attorney *has* been reasonably diligent in this regard, Newman has submitted no affidavit to support such a finding.  The record reveals only that Newman found the address of another entity (National Registered) who may or may not be Tessa's

6

registered agent, and then had his second amended complaint and summons served on that entity and the Ohio Secretary of State.

### 2.    Notice "Reasonably Calculated" to Reach Tessa

For largely the same reasons set forth above, the Court cannot readily determine whether Newman's attempts to serve Tessa have been "reasonably calculated," as a due process matter, to apprise Tessa of the pendency of this litigation.  LSJ, 167 F.3d at 323.  While the Court has no specific reason to doubt Newman's counsel's good faith or competence in this regard, it also cannot conclude, from the current meager record, that Newman has undertaken all reasonable efforts to exhaust other avenues of service and put Tessa on notice that he is seeking a civil judgment in excess of $5 million against it.

In short, because it is unclear that Tessa has been properly served with process, it would be imprudent and potentially improper for the Court to issue a default judgment against Tessa at this time.  For this reason, and those below, Newman's Motion (doc. #27) is **DENIED**.

### B.    Equitable Considerations

Even if the Court were assured that it had jurisdiction over Tessa and was therefore empowered to grant Newman's Motion, it would hesitate to do so for equitable reasons.  In deciding whether and when to issue a default judgment awarding damages to a plaintiff, the Court may consider factors including possible prejudice to the plaintiff; the sufficiency of plaintiff's complaint and the merits of plaintiff's claims; whether the default stems from "excusable neglect" on the part of the defendant; and the size of the award sought by plaintiff. See, e.g., Russell v. City of Farmington Hills, No. 01-2212, 2002 WL 818304, at *2 (6th Cir. Apr.

29, 2002).[4]  The latter considerations are particularly salient here.

### 1.    Responsibility for Default

As a threshold matter, it is unclear to what extent Tessa is to blame for its failure to appear and defend this action.  As discussed above, the present record does not reveal whether Newman has been reasonably diligent in attempting to locate and serve Tessa, let alone whether Tessa is in fact aware of this lawsuit[5] and has been wilfully evading Newman's service attempts or otherwise electing not to appear before this Court.  In light of the authorities suggesting that even a defendant's *deliberate* evasion of service may not always justify issuance of a default judgment, the Court is extremely reluctant to issue judgment against a defendant like Tessa who – at least in theory – may have failed to appear due to its lack of actual notice or some other "excusable neglect" of this case.  See, e.g., Berthelsen v. Kane, 907 F.2d 617, 622 (6th Cir. 1990) (setting aside default entered against defendant who had actual notice of suit and evaded service, where plaintiff had not shown reopening suit would be significantly prejudicial and defendant had offered meritorious defense); see also Shephard Claims Serv., Inc., v. William Darrah & Assoc., 796 F.2d 190, 193-95 (6th Cir. 1986) (emphasizing absence of "culpable conduct," in the sense of a defendant's "intent to thwart judicial proceedings or a reckless disregard for the effect

---

[4] As discussed above, the Court's determination must also be shaped by the general "preference for decisions on the merits."  See id. and introduction to Part II, supra.

[5] The arbitrator's report attached to Newman's complaint repeats, without elaboration, a statement by Newman's arbitration hearing counsel to the effect that Tessa had been "a participant in early stages of the case."  (Doc. #26, Ex. B at 1.)  Because Newman initiated arbitration almost two years before filing this civil lawsuit, however, that statement – even if accurate – does not necessarily imply that Tessa is aware of *these* proceedings.  (See doc. #16 at 1.)  The arbitrator's report further states that pre-hearing materials were "served" on Tessa through CT Corporation.  (Id. at 1-2.)  As discussed above, however, CT Corporation no longer represents Tessa, and it is unclear when, relative to Newman's initiation of this lawsuit and service attempts, the representation ceased.  See Part II.A, supra.

of its conduct on those proceedings," in setting aside default).

### 2. Size and Computation of Requested Award

Newman asks this Court to enforce an arbitration award worth over five million dollars. (See doc. #27 at 3 and doc. #26 Ex. B at 5.)  He does so pursuant to Federal Rule 55(b)(1), which provides for judgments in amounts which are "certain" or "can by computation be made certain" to be issued by the Clerk of Court.  Fed R. Civ. P. 55(b)(1).  Newman's cited award figure of $5,223,704.00, however, was determined after a hearing at which Tessa did not appear.[6]  (See, e.g., doc. #16 at 2.)  It is unsupported by any other record evidence beyond the arbitrator's written decision, let alone any express findings by this or any other court.  The Court is extremely reluctant to issue such a large judgment, on such a slender and essentially unilateral record, without affording Tessa one more opportunity to contest Newman's asserted damage figure in an evidentiary hearing conducted pursuant to Federal Rule 55(b)(2).  See, e.g., Berthelsen, 907 F.2d at 620 (questioning entry of $1,184,311.64 default judgment on strength of plaintiff's affidavit).

Because Newman's Motion for Default Judgment is directed to the Court rather than the Clerk envisioned in Rule 55(b)(1), the Court could presumably construe it as brought under Rule 55(b)(2) and simply order an evidentiary hearing on damages under the authority of the latter section.  However, the Court cannot properly or fairly conduct such a hearing until it resolves the jurisdictional issue discussed at Part I.A, supra.  Because the Court cannot possibly resolve that issue without more information on Newman's efforts to locate and serve Tessa, it **DENIES** Newman's Motion for Default Judgment (doc. #27) **WITHOUT PREJUDICE** to its refiling

---

[6] See note 5, supra.

and instead **ORDERS** Newman to **SHOW CAUSE** why his complaint should not be dismissed for failure of service to and lack of jurisdiction[7] over Tessa.

## III.     CONCLUSION

For the reasons above, Plaintiff Mark R. Newman's Motion for Default Judgment (doc. #27) is **DENIED WITHOUT PREJUDICE**, and Plaintiff is **ORDERED** to **SHOW CAUSE**, within **30 days** of this Order, why this case should not be dismissed for lack of jurisdiction over Defendant Tessa Health Care, Inc.[8]

IT IS SO ORDERED.

_____s/Susan J. Dlott_____
Susan J. Dlott
United States District Judge

---

[7] In its prior Order in this case, the Court expressed concerns about not only its personal jurisdiction over Tessa, but also its subject matter jurisdiction over Newman's claims. (See doc. #16 at 5-6.) Newman was then proceeding on a first amended complaint that invited the Court to confirm his arbitration award under O.R.C. § 2711.09, which provides that parties to arbitration proceedings may apply to Ohio *courts of common pleas* for enforcement. (Id. (citing O.R.C. § 2711.09 (emphasis added))) In his second amended complaint, Newman contends that O.R.C. § 2711.09 and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, both empower this court to enforce his arbitration award against Tessa. (See doc. #26 at 5-6.) Because the Court has not yet determined whether it has the requisite personal jurisdiction over Tessa, it need not and does not decide whether it has subject matter jurisdiction over Newman's claims.

[8] The Court reserves judgment, pending Newman's response to the Show Cause order, on whether the Clerk's entry of default in this case (doc. #29) should stand or be vacated.